JAMES C. TUCKER & another. *vs.* OWEN HOWARD.

Suffolk. March 21. — May 4, 1877. LORD & SOULE, JJ., absent.

A city owning a passageway, a lot on one side of it and another lot in the rear, conveyed to B. the lot on the side, bounding it on the "passageway reserved by said city exclusively for a back passageway" to the lot in the rear, "or for any other purpose said city may choose to appropriate said passageway to." The deed also gave the grantee the right to build over the passageway, leaving it five feet wide in the clear. The city then quitclaimed to A., the owner of the land on the other side of the passageway, the right to pass over it, describing it as five feet wide, as appurtenant to his estate; and afterwards conveyed to B. the lot in the rear, and quitclaimed to him all the rights of the city in the passageway. *Held,* that A. could maintain a bill in equity against B. to restrain him from building over the passageway by placing a wall in it, whereby its width was made less than five feet, it appearing that the passageway could be built over without such wall, at an expense not much larger than by the mode proposed.

A city may convey land by deed to a member of the city council and one of the committee to which the matter was referred, if he does not take any part in the transaction officially, or, as agent of the city, convey to himself.

BILL IN EQUITY, filed January 27, 1873, by the heirs of John C. Tucker, to restrain the defendant from building over a passageway, and from placing a wall in it, by which its width was diminished. Hearing before *Morton,* J., who reported the case or the consideration of the full court, in substance as follows :

The plaintiffs own an estate fronting on Merrimac Street in Boston, and bounded on one side by the passageway in question. On May 25, 1835, the city of Boston, which then owned the land on the other side of the passageway, the passageway

itself and a lot in the rear, on which was a school-house, con-
veyed the lot on the other side of the passageway to Loring,
Floyd and Beal, the defendant's grantors, by metes and bounds,
two of which were as follows: "Thence southeasterly by said
Merrimac Street ninety-three feet two inches to a passageway
of five feet wide, reserved by said city exclusively for a back
passageway to said school-house and lot, or for any other pur-
pose said city may hereafter choose to appropriate said passage-
way to; thence southwesterly by said passageway of five feet wide
sixty-three feet and four inches to a fence." The deed also con-
veyed to the grantees the right " to build over said passageway
and any part of the same, leaving said passageway five feet wide
in the clear, and not less than ten feet high from the level of
said Merrimac Street."

In October, 1862, the committee on public buildings of the
city of Boston was authorized by an order of the board of alder-
men, concurred in by the common council and approved by the
mayor, to grant a right in this passageway to the owner of the
land on the east side thereof, for such consideration as the com-
mittee should approve. This order was referred by the commit-
tee to its chairman and superintendent with full powers, and
on December 12, 1862, the city quitclaimed to John C. Tucker,
his heirs and assigns, " the right to pass and repass, in, upon and
over a certain passageway, five feet wide and ten feet high,"
being the passageway in question; "the said right of passing
and repassing is to be held and enjoyed by the said Tucker, his
heirs and assigns, only as an appurtenance to his said estate
abutting on the said passageway, and in common with the said
city of Boston and others to whom the said city has heretofore
granted or may grant a like right."

On January 27, 1873, the city of Boston conveyed to the
defendant the school-house lot above referred to, bounding it in
part "by a five foot passageway leading to Merrimac Street, and
released and quitclaimed to him, his heirs and assigns, "all the
right, title and interest of the said city, in and to the five foot
passageway above mentioned, but without any covenants of war-
ranty whatever as to said right, title and interest."

It appeared in evidence that the passageway was built over by
Loring, Beal and Floyd from Merrimac Street for about forty

feet towards the rear; that afterwards the defendant, being about to build an L on the rear of the existing house on Merrimac Street, commenced building over the rear part of the passageway, which till then had remained uncovered, and separated by a fence from the plaintiffs' estate, with a gate or door therein opening into their estate; that in so doing he took down this fence, and, to support the L, placed in and upon the passageway a wall twenty inches thick, with a solid stone foundation under ground, supported by piles, leaving a covered passageway about ten feet high, with a door or gate in the wall to the plaintiffs' estate; that he also placed a gate in the passageway above the gate or door to the plaintiffs' estate, and had since kept it closed; and that, by building the wall, he had narrowed the passageway to less than five feet; that the wall had been commenced by the defendant before this bill was filed, but was completed afterwards; that the plaintiffs found that the defendant was encroaching upon the passageway, and told him that he would narrow it by the wall; and that the defendant stopped for two or three days, and then proceeded with it, and that the plaintiffs thereupon brought this bill.

George Snell, an architect for more than twenty years, testified that a building could have been erected over the passageway without building a wall on the plaintiffs' side of the passageway, and produced a plan showing how it could be done; that such a wall would be sound, safe and durable; that it was unusual to do it in this way; that there were precedents in engineering for it, but no precedents just like this; that it would, however, be practicable. He also testified that columns one foot in diameter might be put up in place of the wall; that this was quite common; that the plan proposed by him, without columns or a wall, would be expensive, but not very expensive, a few hundred dollars more; and that he never knew of a house built in this way over a passageway.

Henry M. Wightman, nineteen years in the city engineer's office, testified that in his opinion Snell's plan was a practicable one and feasible, and the expense not very disproportionate; that there would be no difficulty in putting up columns; and that it would only be a question of distributing the weight.

There was also evidence admitted, *de bene*, the plaintiffs ob-
jecting, that John C. Tucker was a member of the city council
and a member of the committee on public buildings at the time
the release to him from the city of Boston was executed.

The judge found that the defendant had violated the plain-
tiffs' rights, by diminishing the width of the passageway, and
reserved the case for the determination of the full court.   If the
finding was warranted, a decree was to be entered for the plain-
tiffs ; otherwise, the bill was to be dismissed.

*A. A. Ranney*, for the plaintiffs.

*C. A. Welch*, for the defendant.   1. If the city could convey
to John C. Tucker, all that passed by the deed was a right to
pass over the passageway, and the plaintiffs are only entitled
to a suitable and convenient right of passage.   This right has
not been interfered with.   See *Atkins* v. *Bordman*, 2 Met. 457 ;
*Richardson* v. *Pond*, 15 Gray, 387, 389.

2. The right, conveyed to the defendant's grantors, to build
over the passageway, gave a right to support the building by a
wall, that being the ordinary and usual way.   The grant being
for a valuable consideration, it is to be presumed that the grantor
intended to convey, not only the thing specifically described, but
everything necessary to the enjoyment of the thing granted.
*Atkins* v. *Bordman*, 2 Met. 467, 468.   If there is any incon-
sistency between the right to build over the passageway and the
reservation of the five feet clear, the words must be taken most
strongly against the grantor.   They were intended to protect the
rights of the owner of the fee, and had nothing to do with the
rights of those having merely an easement in the passageway.

3. Under the right reserved in the deed to Loring and others,
the city could only appropriate the land to its own use as owner
of the land in the rear, or to a public use.   No right was re-
served to grant an easement to a private person.

4. It may also be questionable whether Tucker, being a mem-
ber of the city government and one of the committee on public
buildings, could, as such agent of the city, convey an interest to
himself, or, if he could, that the city could not at any time avoid
it; and the defendant stands in the same position as the city,
having had all the rights of the city in the passageway released
to him.

ENDICOTT, J. The court is of opinion that there must be a decree for the plaintiffs on this report.

The city of Boston in 1835 conveyed to Loring and others the estate now owned by the defendant, bounding it on a passageway five feet wide, reserved by the city for a way to its schoolhouse, and for any other purposes for which it might see fit to appropriate it. The deed conveyed to the grantees the right to build over this passageway or any part of it, leaving it "five feet wide in the clear and not less than ten feet high." The language of the deed is explicit. The width of the way is exactly given, and the right to build over it must be exercised in such manner as to leave the passageway five feet wide in the clear. In other words, the passageway reserved by the city is not to be narrowed or obstructed by reason of the structure which the grantees or their assigns may erect over it. The case does not present the question what would be the rights of the parties if the defendant could not cover the passageway without support from below within the way itself. The evidence reported shows that it is practicable to do so, at no very disproportionate expense, without such support.

Nor do we find anything, in the deed of the city to Loring and others, which prevented the city from conveying an easement in this way to John C. Tucker, as appurtenant to his adjoining land, in common with the city and other persons. The fact that Tucker was at the time of the conveyance to him a member of the city council, and one of the committee on public buildings, does not invalidate his deed. It does not appear that he took any part in the transaction officially, or that, as agent for the city, he conveyed to himself. The city afterwards conveyed its right, title and interest in the passageway to Howard, but he took his title subject to the easement previously conveyed to Tucker.

The finding that the defendant did violate the rights of the plaintiffs by the erection of the wall in the passageway was therefore proper. No question is reserved as to the form of the decree; that must be determined before a single judge.

*Decree for the plaintiffs.*