WINNIFRED SHORT *vs.* JOHN DEVINE.

Bristol. October 26, 1887. — February 6, 1888.

Present : MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Deed — Reservation — Right of Way — Partition Fence — Gates.*

A reservation in a deed of a right of way " over a strip of land ten feet wide " describes the land over which the grantor may enjoy the right, and not the limits of the way itself ; and the grantee may use the strip for any purpose not inconsistent with such enjoyment.

The owner of a narrow lot on a city street conveyed the front part, on the northerly side of which stood a house covering nearly two thirds of its width, reserving for the benefit of the rear part a right of way " over a strip of land ten feet wide on the southerly line of the granted premises." The grantee erected a partition fence on the " south line of the way," and put up gates at either end of the " strip," and an action was brought for obstructing the way. *Held,* that the partition fence on what must be taken to be the division line was not an obstruction, and that, in the absence of controlling evidence, the gates were rightfully maintained.

TORT for the obstruction of a right of way across the defendant's land in Fall River. The plaintiff's husband was joined as a party plaintiff.

Trial in the Superior Court, before *Barker,* J., who reported the case for the determination of this court, as follows :

Thomas Devine, who owned the premises, shown on a plan used at the trial, a copy of which is printed on the next page, conveyed the defendant's land to him by a deed, which described it as beginning at a corner of other land of the grantor on the easterly side of North Court Street, thence running northerly by that street $43\frac{8}{100}$ feet, to land formerly of Murphy, thence easterly by Murphy's land $88\frac{47}{100}$ feet, thence southerly and westerly " by land of said grantor's to the point of beginning, containing fourteen (14) rods of land, more or less," and set forth that " the grantor reserves to himself, his heirs and assigns, to pass and repass over and upon a strip of land ten (10) feet in width on the southerly line of above granted premises to and from North Court Street with teams and otherwise."

By his will Thomas Devine devised the rest of the premises shown on the plan as follows : " 2d. To my daughter Mary Ann O'Day the dwelling-house in which I now reside, and fourteen

rods of land; said house being situate on *North Court Street* in Fall River, and being south of the lot of land heretofore conveyed by me to my son John Devine; to her, her heirs and assigns, with all privileges, easements, and appurtenances thereto belonging. 3d. To my daughter Winnifred Short, the house and seven (7) rods of land, built by me and located easterly of the house of my son John, on his lot before mentioned; to her, her heirs and assigns, with all the privileges, easements, and appurtenances thereto belonging. 4th. To my son Patrick Devine, the house and seven (7) rods of land, situate easterly of the lot heretofore devised in this will to my daughter Mary Ann O'Day."

It was agreed that the plaintiff had a right of way over and upon the premises described in the deed of Thomas Devine to the defendant, within the limits named in said deed, this being the only way from the plaintiffs' premises, which were at the easterly end of said way, to the public highway; that the defendant had built, as a division fence, a close board fence, supported by posts, along and upon the south line of the way described in the deed, which is the south line of the defendant's premises, the fence and posts averaging from six to eight inches in thickness, and between four and five feet in height; that the defendant had also caused to be made and hung across and upon the way, at the easterly end thereof, two close board gates, — one of the gates being about five and a half feet in width, and hung at one end with hinges to the fence aforesaid, and fastened

at the other end with a long iron rod or hook hooked into a staple in a stub set in the ground, and the other gate being about four feet wide and shutting upon the larger gate with a latch, both gates being between four and five feet in height, and ten feet and one half-inch wide; and that at the westerly end of said way there are two open slat gates, eleven feet wide, corresponding in width and manner of construction with those at the easterly end.

No question was made that, if the defendant had the right to erect and maintain gates and a fence, these were reasonable and suitable, and there was no evidence that the fence had at any time actually obstructed the plaintiff in the use of the way.

Upon these agreed facts, the plaintiff requested the judge to rule, and to instruct the jury, that, under the clause in the deed reserving a right of way, the fee remained in the grantor, and the plaintiff, as his devisee, acquired a right of way in the locus as appurtenant to the lot devised to her, and that she had a right to use it for all beneficial purposes for which a street or way might be rightfully used, including the ways mentioned in the deed of the grantor to the grantee and otherwise, without being obstructed in its use by gates, fences, bars, or otherwise; but that, if the fee did pass from the grantor to the grantee, the plaintiff had a right of way over the locus as appurtenant to the lot devised to her, and had a right to use the same as before named.

The judge declined so to rule, and ruled that the fee in the land over which the right of way was reserved in the deed passed to the grantee therein, and that the defendant, as owner thereof subject to the right of way, had the right to build and keep up suitable gates across the same at either end, and also to build and maintain a suitable division fence upon the line between him and the adjoining proprietor; and directed a verdict for the defendant.

Judgment was to be entered for the defendant upon the verdict, if the rulings and refusals to rule were correct; but if upon the facts the plaintiff was entitled to a judgment, then judgment was to be entered for the plaintiff for such sums as the parties might agree upon, or as an assessor might find.

*J. C. Blaisdell*, for the plaintiff.

*J. M. Morton*, for the defendant.

W. ALLEN, J.   Thomas Devine, under whom both parties claim, conveyed the northerly portion of his front land to the defendant, and in the deed reserved a right of way in these words: "The grantor reserves to himself, his heirs and assigns, to pass and repass over and upon a strip of land ten feet in width on the southerly line of above granted premises to and from North Court Street with teams and otherwise." In *Johnson* v. *Kinnicut*, 2 Cush. 153, the grantor conveyed the westerly portion of his land, the easterly line of the land conveyed being twenty feet westerly of the west wall of his store, and granted " the right of passing and repassing over the space of twenty feet between the west wall of the store aforesaid and the eastern line of the before granted premises." It was held that these words did not describe the limits of the way granted, but the close over which the grantee should have a convenient and suitable way, and that he could not object to obstructions of the " space " which did not interfere with a reasonable and convenient way for him.   The reservation in the deed in the case at bar will not be construed more strictly against the grantee than the grant in the case cited would be construed against the grantor; and in other respects the cases are on all-fours, and differ from *Tucker* v. *Howard*, 122 Mass. 529, and *Nash* v. *New England Life Insurance Company*, 127 Mass. 91, both of which were grants of existing and defined " passageways " particularly described.

The statement in the report, that the division fence was built upon the south line of the way described in the deed, must be taken to mean the south line of the strip of land over which the right to pass and repass was granted, and that the south line of the way was also the division line, that is, the south line of the land conveyed, the line of the way coinciding with the division line between adjacent lands.   The question in regard to the fence is, whether the building of a division fence upon the line was a disturbance of the plaintiff's right of way.

It does not appear that the division fence interfered, or could interfere with any suitable and reasonable way for the plaintiff over the strip of land.   But if it should be assumed that the plaintiff had a right of way over the whole width of ten feet, we do not think that the fence would be an obstruction.   The law

provides for partition fences.    Pub. Sts. c. 36, §§ 2, 7, 9.    When the statute applies, the privileges and burdens prescribed in it apply to the land, and affect and modify the estate in it.    The right to a partition fence is part of the estate in the land.    The conveyance of the land includes the right and the duty to have a fence upon the division line ; the burden of having one half of the fence upon the premises, and the privilege of having the other half upon the conterminous land.    *Newell* v. *Hill*, 2 Met. 180. *Sparhawk* v. *Twichell*, 1 Allen, 450.    *Kennedy* v. *Owen*, 131 Mass. 431.    No easement or incumbrance can grow out of this right; it cannot constitute or work a breach of a covenant of warranty, or of quiet enjoyment, or against incumbrance in a conveyance of the land, nor a disturbance of a right of way granted over the land.    How could the reservation of the right of way in the deed affect the right of the parties to it as to a partition fence ?

The reservation in the deed of Thomas Devine to the defendant of a right of way over the land, the line of which coincided with the division line between the lands, could not affect the right to a partition fence on the line.    Thomas Devine, the grantor, clearly had a right to have a partition fence, one half of which should be on the defendant's land that was subject to the right of way; and Mary Ann O'Day, his devisee of the land adjoining on that side, and of the right of way appurtenant to it, has the same right; and the defendant has no right to erect a fence wholly on her land.    As against the plaintiff, it will not affect the defendant's right to a partition fence if the reservation shall be so construed as to give to Thomas Devine, and those holding, under him, the parcel of land on the southerly side of the way, the right of free access to the way from any part of that land, and to prevent the erection of any fence or obstruction on the division line between that parcel and the way. If the owner did not assert such right, but required or assented to the erection of a fence, the statutes in relation to partition fences would apply.    The plaintiff is the devisee of Thomas Devine of another parcel of the land, bounding only on the easterly end of the way, and of the right of way over the strip of land to the street as appurtenant to that.    The right she has is the right apportioned to the parcel she holds, and does not include

a right to enter upon the way except at its termini, and gives her no right to prohibit the defendant and Mary Ann O'Day from erecting a partition fence between their lands. Under any construction that can be given to the reservation, we think that the defendant had a right, as against the plaintiff, to erect a division fence upon the line of the way, which we understand to be a fence one half of which is upon either side of the division line, and the ruling of the court on this point was correct.

The right of the defendant to erect gates must depend upon the facts and circumstances. The plaintiff's right was to pass and repass from the street to her house-lot over a strip of land ten feet wide belonging to the defendant. The gates were erected at the termini of the way, not in the middle of it, as in *Dickinson* v. *Whiting*, 141 Mass. 414. The passage through these was more than ten feet wide, and the only question in regard to them was whether the defendant had a right to maintain reasonable and suitable gates at the termini of the way.

*Williams* v. *Clark*, 140 Mass. 238, was on the construction of an agreement by a railroad corporation to furnish a convenient crossing. The crossing was built by the corporation in 1853, without gates or bars, and was so maintained by it and its successors until 1884. It was held that there was no right to obstruct the crossing by gates or bars. The court say: "While, in terms, it is not provided that this crossing should not be unobstructed by gates or bars, yet the facts that it was to be ' convenient,' and that the railroad company itself constructed and for many years permitted the existence of such a one, sufficiently show that what it intended to grant was a free right of passage. No usage or circumstances such as are shown where one grants a way or right of way over a field devoted to agricultural or other purposes, indicating that the right granted is to be subordinate to the rights of the grantor, or the use made by him of the premises, here exist. That a crossing obstructed by gates or bars is far less convenient to those entitled to use it, is fully conceded by the defendant's argument."

In *Welch* v. *Wilcox*, 101 Mass. 162, the owner of two adjoining estates in Charlestown conveyed one to the defendant, with the right to use " the passageway leading from Lexington Street,

as now laid out," over the other estate, which he soon after con-
veyed to the plaintiff, excepting a three-foot passageway as laid
out on the premises. There was no gate on Lexington Street,
and the passage was open and remained so for eight years, when
the plaintiff erected a gate at the end of it on Lexington Street,
which narrowed the passage three inches. The defendant re-
moved the gate. The case was submitted on agreed facts, one
of which was that the defendant could show that passages of
like character in Charlestown were without gates, and the court
held that the plaintiff had no right to maintain the gate. The
court say: " It does not appear in what manner the way was
laid out, but we must infer that it was by some well marked
boundaries known and recognized by both parties. There was
no gate separating the passageway from the street at the time of
these conveyances, and in the opinion of the court the plaintiff
has no right to erect and maintain a gate at the entrance of
said passageway, or to narrow the way as described. If the ob-
struction in the way had existed at the time of the deed to the
defendant, or even if it had been shown that similar passage-
ways were usually so closed, the plaintiff's claim would stand
on stronger ground, for it may well be presumed that the parties
to the grant were acquainted with the public usages, and created
this easement with reference to those usages."

In *Underwood* v. *Carney*, 1 Cush. 285, the defendant owned a
right of way over Morton Place, in Boston, subject to a prior
right of way of the plaintiff. The defendant erected ware-
houses on the line of Morton Place, obstructing the place with
sidewalks, trap-doors, shutters, &c. A ruling that the use made
by the defendant of the way was a reasonable use was sustained,
and judgment was entered on a verdict ordered for the defend-
ant. The court say that " public usage, — the use, which others,
similarly situated, make of their land, — is evidence of a reason-
able use," and that that rule is decisive of the case; " for we
are not satisfied, that the defendants have made any use of the
passageway, or that they have done any acts on their lands
adjoining thereto, which are not justified by a common and well
established usage in the place."

In *O'Linda* v. *Lothrop*, 21 Pick. 292, the action was by the
owner of the fee against the owner of a right of way for

abuse of the right. The case was tried before Chief Justice Shaw and a jury, and was submitted to the jury under instructions as to what would be a reasonable use of the way. The opinion considers what is a reasonable use of a way, depending much on the local situation, and much on general usage.

The present case was tried before a jury, and comes up on the report of the judge, which states that the parties agreed upon certain facts, upon which the plaintiff asked for certain rulings and instructions to the jury, which were refused, that other rulings were given, and that a verdict was directed and taken for the defendant. In this respect, and in the fact that the action is by the owner of the right of way for obstructing the way, the case resembles *Underwood* v. *Carney, ubi supra.* The case was not submitted to the court upon an agreed statement of facts, but the parties agreed upon what facts could be proved, and the court ruled that they were not sufficient to sustain a verdict for the plaintiff. The form of the ruling was that the defendant had a right to maintain suitable gates; but the real ruling, as shown by the course of the trial, was that the plaintiff had not shown that the defendant did not have the right to maintain the gates. A person over whose land there is a right of way will or will not have a right to maintain gates at the ends of the way, according to circumstances.

Upon the facts in this case, we think it does not appear that the defendant had not the right, and it must be taken, for the purposes of this case, that he had the right. The defendant holds the fee of a house and lot on a public street, under a deed in which the grantor reserved a right of way. The grantor owned and occupied the adjoining lot on the street, and owned two smaller lots in the rear of the two upon the street. There were no division fences between the lots. It does not appear whether they were or were not fenced upon the street. The right reserved was to pass and repass over a strip of land ten feet wide next to the lot occupied by the grantor. At the time of the grantor's death there were houses upon the two lots in the rear, and those lots and the one occupied by him were devised by him to different children, the one in the rear of the defendant's lot being devised to the plaintiff, and occupied by her. The defendant's lot is about forty-four feet wide and eighty-

eight feet deep. The plaintiff's lot is of the same width, and about one half the depth of the defendant's. Nothing appears as to the manner in which the way and the different lots have been used, and nothing as to the size and position of the houses except a plan without measurements and not stated to have been drawn to scale. It appears from the plan that the defendant's house is near the northerly line of his lot, and not far from the street, and occupies considerably more than half of the front of the lot, and that the strip of land on which is the right of way is a part of his door-yard.

It does not appear what the usage in Fall River and in the defendant's neighborhood is in regard to having fences in front of houses and gates at the entrance to yards. It is probable that there is some usage in regard to it, and it is reasonable to suppose that it may be customary to have such fences and gates. In the absence of any evidence to the contrary, it may be assumed that a person who receives a right to pass through his neighbor's yard receives it under the same conditions, as to an entrance to the yard, that owners generally impose upon themselves, and that the person who receives it would be likely, were he owner, to impose upon himself. It is not to be presumed from the mere fact that a person grants a right to pass through his yard to adjoining land, that he thereby agrees to leave his yard open to the public, and the reservation in a deed of a house and lot of a right to pass through the yard does not imply a right to remove usual and reasonable gates at the entrance. *Maxwell* v. *McAtee*, 9 B. Mon. 20. *Connery* v. *Brooke*, 73 Penn. St. 80.

All the facts and circumstances which are stated are consistent with the right of the defendant to maintain the gates, and nothing appears to restrict his right in that respect as owner of the fee. The court therefore properly ruled that he had the right to maintain suitable gates at either end of the strip of land over which the right of way was reserved.

*Judgment on the verdict.*