### MARY E. TRUAX
*v.*
### WILLIAM H. GREGORY.

*Opinion filed April 16, 1902.*

1. WILLS—*the word "absolute" may be given a restricted meaning and operation.* The word "absolute" may be used in connection with an interest in property and yet not be regarded as the equivalent of "unqualified," and if the context of the instrument warrants it the word may be given a restricted meaning.

2. SAME—*will construed as not devising the fee to a right of way.* A devise to the testator's son of certain described lands, "with the right of way from the highway near my house," etc., lying over certain land devised to his daughter, which devise concludes with the words, "to be his absolutely at and after my death," will not be construed as passing the fee in the land occupied by the right of way to the son, but as giving the son an easement of passage in the right of way as it was used by the testator during his lifetime.

3. EASEMENTS—*when party has no right to remove gate from right of way.* Where the gift of a right of way to land devised is not of a general open way but of a particular and established way, which was, during the testator's lifetime, closed by a gate at the highway, the party to whom the right of way is given has no right to break down or destroy the gate, but must open and close the same when he passes through.

WRIT OF ERROR to the Circuit Court of McHenry county; the Hon. C. H. DONNELLY, Judge, presiding.

V. S. LUMLEY, for plaintiff in error.

D. T. SMILEY, for defendant in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery filed by the plaintiff in error for a decree establishing and declaring the boundary lines of a certain "right of way" created by the will of Stephen O. Gregory, deceased, over certain lands devised to her by said testator, and to restrain the defendant in error, who is her brother, from breaking down, removing or leaving open the gate at the easterly terminus of such right of way.

Stephen O. Gregory died January 7, 1892, leaving him surviving three children,—the plaintiff in error, the defendant in error and Mrs. Cordelia Stevens. He left a last will, which bore date June 20, 1889. Only the third, fourth and fifth clauses of the will are important to be considered here. They are as follows:

"*Third*—I give and bequeath to my son, William Henry Gregory, the following described real estate, to-wit: The north-east quarter of the south-east quarter of section 21; also the undivided one-half of the south-west quarter of the south-west quarter of section 22, with the right of way from the highway near my house in section 22 to the said north-east quarter of the south-east quarter of section 21; also one rod of land off the south-west corner of the north-west quarter of the south-west quarter of section 22 to connect the said two tracts of land, all in town 44, McHenry county, Illinois, to be his absolutely at and after my death.

"*Fourth*—I give and bequeath to my daughter Cordelia Stevens the following described real estate, to-wit: The south-west quarter of the north-west quarter of section 22; also the undivided one-half of the south-west quarter of the south-west quarter of section 22, with the right of way from the highway near my house in section 22 to the above described lands, all in township 44, McHenry county, State of Illinois, to be hers absolutely at and after my death.

"*Fifth*—It is my will and desire that my daughter Mary Esther Truax have the use and benefit of all the balance of my real estate that I may die seized of, (except that hereinbefore named and described,) to be subject to her use, control and benefit during her lifetime, upon the express condition and with the understanding that should my beloved wife (her mother) survive me, that all her wants and expenses during her life and at her death be fully and well provided for by my said daughter Mary Esther Truax."

On a hearing it was shown by testimony that was not controverted that a public highway known as the Woodstock and Crystal Lake road passed through the lands owned by the testator, from the northerly point of its entrance in a south-easterly direction, leaving a part of two tracts of his land, perhaps in the aggregate forty acres of land, on the north-easterly side of the highway, and the remainder, consisting of about two hundred and eighty acres, on the south-westerly side of the highway; that the residence of the testator and his barn and other outbuildings were located on the lands lying north and east of the highway; that the lands to be enjoyed by the plaintiff in error under the will abutted upon the highway upon either side thereof, and the lands given to the defendant in error and Mrs. Stevens were situate wholly west of the highway, and could only be reached from the highway by passing over the lands given by the will into the possession of the plaintiff in error; that the testator, at the time of his death and for many years prior thereto, and prior to the execution of the will, maintained a passageway leading from the south-westerly side of the highway, nearly opposite his dwelling house, south-westerly through his fields and pasture lands to the more distant tracts; that he maintained fences on either side of this passageway for a portion of its length; that he had constructed a bridge to carry it across a ditch or water-

way and had graded and graveled a portion of such passageway; that the testator erected and maintained a gate at the easterly terminus of this passageway, which was at the public highway; that the passageway so maintained by him beyond the line of the fences was well established and known to the litigants, and that it was this right of way which was intended to be granted by the will of the deceased father of these litigants.

The court entered a decree defining the boundaries of this right of way, and with that finding of the court both parties are content. The right of way is located entirely over and upon lands devised to the plaintiff in error by the fifth clause of the will of her father. It, however, appeared that the defendant in error claimed the will invested him with the absolute title in fee simple to the land upon which the right of way was located, and that under this claim he had broken down and removed the gate which the plaintiff in error maintained at the easterly end of the right of way, being the point at which the right of way entered into the highway. The decree rendered by the chancellor made no finding as to this claim of absolute title in fee to the land on which is located the right of way, but found and decreed that the defendant in error was entitled, by virtue of the last will and testament of said Stephen O. Gregory, deceased, to an open, unobstructed and unrestricted right of way, and was not required to open and shut any gate at the easterly terminus thereof, and that the plaintiff in error had no right to maintain a gate there, and denied the prayer of the bill for a decree restraining the defendant in error from breaking or removing the gate at the said easterly terminus of said right of way. This writ of error brings into review the correctness of the decree with reference to the right of the plaintiff in error to maintain a gate at the easterly terminus of the right of way.

If, under the true construction of the will, absolute title in fee to the right of way was devised to the defend-

ant in error, the decree is unquestionably correct. But we do not so construe the will. The argument in favor of this construction is based wholly upon the meaning which it is urged must be given to the word "absolutely," used in the concluding portion of the third clause of the will. The word "absolute," when used in connection with a gift or grant of personal or real property, has been frequently interpreted to carry a fee. But it is not to be given that as its fixed and unvaried meaning. The context of the instrument in which the word appears may determine the effect to be given it. It may be used in connection with an interest in property and yet not be regarded as the equivalent of "unqualified." (*Williams* v. *VanCleve*, 7 T. B. Mon. 393; *Washington Fire Ins. Co.* v. *Kelly*, 32 Md. 421.) In *Smith* v. *Bell*, 6 Pet. 72, the word "absolutely," used with reference to an estate in personalty, was held to be qualified by other words of the bequest, and thereby explained to mean only such absolute rights as a tenant for life could enjoy. In *Bradley* v. *Wescott*, 13 Ves. 450, the word was given a similarly restricted meaning and operation. In *Boyd* v. *Strahan*, 36 Ill. 355, the cases of *Smith* v. *Bell*, *supra*, and *Bradley* v. *Wescott*, *supra*, were cited with approval and the doctrine of those cases applied to the controversy then under consideration. In *Kratz* v. *Kratz*, 189 Ill. 276, the words "absolutely and unqualifiedly," used in a will in connection with an estate in lands, were so qualified in meaning as to confer only the right to hold and enjoy an estate as a tenant for life or during the widowhood of the devisee.

The language employed in the clause in the will making the devise to the defendant in error does not in express terms purport to invest the defendant in error with the fee to the land on which the right of way is located. The express devise is of certain described tracts of land, "with the right of way from the highway near my house in section 22," etc. That which is so devised, aside from the specified tracts of land, is denominated "right of way"

merely, and this description would seem to refer to an easement rather than to the land itself. In the fourth clause of the will, which contains the devise to Cordelia Stevens, the grant of other lands to her is accompanied with a like provision securing to her the same right of way, and the word "absolutely" is used in the same connection with the devise to her as with that to the defendant in error. It is very clear it was not intended that these provisions with reference to the right of way should confer, absolutely and unconditionally, the title in fee simple thereto to each of these two different persons. The purpose of the testator is unmistakable. It was to provide for each of these devisees the means of ingress and egress to and from the public highway, over lands which he disposed of to the plaintiff in error by the fifth clause of his will. By the fifth clause in the will the plaintiff in error was invested with a qualified estate in the lands over and upon which the right of way in question existed, and also other lands abutting on the right of way on the north and south sides thereof, and still other lands situate to the east of the public highway. The gift to her was of the use, control and benefit, during her natural lifetime, of the real estate given to her. At the time of the making of the will, and before that, and from thenceforth during the lifetime of the testator, the "right of way" in question was maintained for the purpose of the convenient use and benefit of the lands situate west of the public highway, which included that devised to the plaintiff in error, and also the tracts devised to the defendant in error and to Mrs. Stevens. The end intended by the testator to be subserved by the "right of way" privileges given to the defendant in error and Mrs. Stevens by the will was not to invest in them the exclusive right, as against the plaintiff in error, to the use of the "right of way." The "right of way" was established, graded in places and supplied with a bridge and with a gate at its easterly terminus when the will was executed

and when the testator died, and the testator intended by his will to make it, as it then existed, available to all of his devisees. The right of way was and is essential to the proper and convenient "use, control and benefit" of certain of the tracts of land, the use, control and benefit whereof the testator gave to the plaintiff in error by his will. He intended that the easement, as it then existed, should be continued for the benefit of all the land which it beneficially affected. In such state of case, ought it be ruled that it became the duty of the plaintiff in error, at and after the death of the testator, to remove the gate closing the right of way at the public highway and to refrain from maintaining a gate there? Lands, the use and benefit whereof the will gave to the plaintiff in error, were used by the testator during his lifetime, and by the plaintiff in error subsequently, for purposes of grazing and pasturage. This gate served to keep cattle and other stock from straying from the pasture to the highway, and prevented animals from passing from the highway to the right of way and from thence to such pasture lands. The testator maintained a gate there for that and perhaps other reasons. The devise to the defendant in error did not expressly provide for an open way, but devised certain tracts of land with the right of way as it then existed. The grant or gift to the defendant in error was of a mode of ingress and egress afforded by the "right of way" as located and used by the testator. We are unable to assent to the view that the devise of the easement authorized the defendant in error to demand that the gate placed by the testator at the highway should be removed or that the plaintiff in error should not maintain a gate there thereafter.

In *Green* v. *Goff*, 153 Ill. 534, it was said in the opinion of the Appellate Court, which was adopted as the opinion of this court: "It has been uniformly held that the erection of gates or bars at the termini of a private way is not an unreasonable interference with the use of the

way. (*Maxwell* v. *McAtee,* 9 B. Mon. 20; *Whaley* v. *Jarrett,* 69 Wis. 613; *Short* v. *Devine,* 146 Mass. 119.) This is regarded as a reasonable rule, in view of the great advantage to the owner of the fee and the slight inconvenience to the owner of the way on account of the erection of such gates or bars."

The gift to the defendant in error not being, as we have seen, of a general open way but of a particular established and known way which was then closed at the public highway by a gate, he was not justified in breaking down and destroying such gate, but was required to open and close the same as he should find occasion to pass and re-pass through it. As to the principle here involved, see 19 Am. & Eng. Ency. of Law, 114; 4 Leading Cas. Am. Law of Real Prop. p. 218; *Brill* v. *Brill,* 15 N. E. Rep. (N. Y.) 538; *Short* v. *Devine,* 146 Mass. 119; Jones on Easements, secs. 405-407; Washburn on Easements, (2d ed.) p. 216. Our conclusion therefore is, the chancellor erred in finding the defendant in error was justified in breaking down the gate or removing the same.

It seems proper to remark that though the right of way in question is but an easement, and though plaintiff in error has mutual right with defendant in error to use the same for all the purposes of a "right of way," yet she has not the right to make other uses of it which are inconsistent with its character as a private way or "right of way." It cannot be lawfully used by her or her tenants as a cattle yard or place for feeding or keeping stock or farm animals. It is a way for ingress and egress for those entitled to use it, and cannot lawfully be devoted to purposes inconsistent with such use of it.

The decree, in so far as it declares the plaintiff in error may not lawfully maintain a gate at the easterly terminus of the right of way, is reversed and the cause is remanded for further proceedings in accordance with the views here expressed.          *Reversed and remanded.*