## GEORGE W. LONG v. D. M. GARRISON.

Court En Banc. May 28, 1925.

Certiorari denied October 10, 1925.

1. Courts. Jurisdiction. A court of chanecry cannot pass upon matters not presented by the pleadings.
    Courts can only act upon such matters as are properly brought before them.

2. Courts. Jurisdiction. Decree held to be justified by pleadings.
    In an action to enjoin defendant from interfering with the use of a right-of-way and asking that the rights of the parties be determined, held the court was justified in decreeing that defendant should maintain gates for use of complainant.

3. Dedication. Recorded plat showing road or street operates as dedication of the road or street.
    The laying out of road, street or alley upon a plat or plan, and also upon the ground, and the registration of the plat operates as a dedication of it, not only in favor of those who buy from the donor, relying upon the existence of the road, street or alley, but also in favor of all who buy on the general plan of the locality.

4. Dedication. Evidence held to show only private right-of-way dedicated.
    In an action to enjoin closing a right-of-way where a plat of the property had been filed and the strip of ground thereon was marked "right-

of-way" and the right-of-way ran only from a public road to complainant's lot, **held** that the recording of the plat so marked did not operate as a dedication of the land for an open road, but only gave a private right-of-way.

5. **Easements.  Owner of land may maintain a gate across right-of-way.**
  In the absence of an express provision for an open way in a grant or gift of a private right-of-way, the owner of a fee may shut the termini thereof by gates, which the grantee must open and close when he uses the way.  As nothing passes as incident to a grant for a right-of-way over the land of another except what is necessary for its reasonable and proper enjoyment the grant of such way does not deprive the grantor of the right to erect gates at the termini of each way in entering and leaving his land.

Appeal from Chancery Court, McMinn County; Hon. R. W. Smartt, Circuit Judge, Sitting by Interchange.

Affirmed.

E. B. Madison, of Athens, for appellant.

Jones and Davis, of Athens, for appellee.

DeWITT, J.  This is a controversy over an easement over the land of defendant and his claim of right to erect and maintain gates thereon.  This claim is resisted by the complainant.  The owner of the servient estate is the defendant D. M. Garrison.  The owner of the dominant estate is the complainant George W. Long.

The undisputed facts are that in June, 1919, a farm known as the Wilson farm, near the town of Niota in McMinn county, having been subdivided into lots and acreage tracts, was sold at public auction to various purchasers.  The plat showing the subdivision was registered before the sale, in the office of the County Register.  This plat showed, among other things, lots seven, eight and nine lying in a row, the eastern line of lot seven being on a public road and the three lots running in the row westwardly from the road.  Lot seven contains 38.43 acres and lot eight contains 65.92 acres.  At the sale lot seven was purchased by defendant Garrison and lot eight was purchased by complainant Long.  At the time of the sale there were fences along the eastern and western lines of lot seven, the eastern fence being on the line of the road and the western fence being on or near the line between lots seven and eight.  These fences ran to the southern boundary of lot seven, along which was also a fence. The plat of the subdivision showed a strip of land twenty feet wide along the southern boundary of lot seven, extending from the public road on the east over lot seven to lot eight and beyond, which strip was marked on the plat, "Right-of-Way."  Lots seven and eight are used by their respective owners for cultivation and pasture. At the sale, lot seven was purchased by the defendant prior to the purchase of lot eight by the complainant.  As to the statements made by the auctioneer and others concerning this right-of-way at the time of the sale, there is a dispute which will be discussed here-

after. There is no other way or means of ingress and egress between lot eight and the public road than by the said right-of-way so marked on the plat along. the southern part of lot seven. This way, or easement, is essential to the value and desirability of lot eight and lot nine west of it. For more than three years the complainant, in using the right-of-way, was accustomed to take down the rail fence across it between lots seven and eight and restore it after entering upon the right-of-way to the road.

Differences arose at various times between the parties as to their right-of-way, and culminated in this suit. Complainant claims that defendant wanted to cultivate part of the roadway and he objected; that defendant talked of putting gates or other obstructions, upon the road. Defendant claims that complainant talked or acted as if he were the absolute owner of the roadway. Defendant in plowing encroached upon the roadway, the extent of which is in dispute. Defendant insists that it was done by inadvertence. Defendant concedes that complainant is entitled to the use of the strip of land for a way of ingress and egress, but insists upon a right to erect and maintain gates across it at the eastern and western ends of lot seven, so as to keep lot seven wholly enclosed and not to burden him with the erection of a fence along the northern line of the roadway.

Complainant filed this bill on January 13, 1923, averring that he purchased lot eight relying upon the right to use the said roadway freely and without obstruction as his only means of approach from the public road to his land; that this was a material consideration in the purchase; that defendant had actual and personal notice, when he purchased lot seven, of the right-of-way or easement twenty feet' wide thereon; that the registration of the plat under which all the lots were sold amounted to a designation, dedication and fixing of said right-of-way as a private way and outlet for the use of complainant and the owner of. lot nine, which defendant was bound to respect and recognize; that defendant was encroaching upon said right-of-way by plowing and breaking up the surface; leaving only a narrow strip of less than half the original right-of-way—which encroachment, in places, by reason of the nature of the ground, the lay of the land, etc., amounted to an obstruction and prevention of complainant in the use of the roadway; that defendant had denied his right to the easement and would not desist from said plowing. The complainant prayed for an injunction restraining defendant from plowing or otherwise trespassing upon or obstructing the roadway or interfering in any manner with the free and unimpeded use and enjoyment of the twenty foot right-of-way in its entirety. The bill contains also the following prayer:

"That on the hearing and full determination of complainant's rights in said strip of land and his easement over the same, such decree be made as will reach the equities of complainant's case and fix his rights in said roadway and that he have all such other, further and general relief as his case merits."

Defendant filed an answer but no pleading seeking affirmative relief. He admitted complainant's ownership of lot eight and his easement or right-of-way over the twenty foot strip of land, and averred that he had permitted complainant to enjoy the use of said easement by taking down the rails of the fence between tracts seven and eight and also at the eastern side of tract seven, from time to time, and passing over said easement. He denied that he was encroaching upon the right-of-way or preventing the free and unobstructed use and exercise thereof by the complainant, and his enjoyment of rights therein. He admitted that he might have plowed up a small portion of the right-of-way, but, if so, it was accidental and inadvertent and not purposely done, and was due to uncertainty as to the location of the line. He denied that he had injured or wronged complainant in anyway, and that there was any occasion for filing this bill. He averred that complainant once came to him and demanded that he fence off the right-of-way, thus creating a lane through his field, and this he declined to do. He denied that complainant was entitled to have said roadway opened as a public road. He averred that the unobstructed use of said easement simply means that the same shall not be obstructed so that the complainant cannot pass over the road; that the defendant has the right to maintain fences and gates over said easement and upon defendant's lands; that the fences were across the lands when the complainant purchased the same; that the complainant had been going through the fences in the use of the easement since the purchase of his lands; that defendant's fields were enclosed by the fences, and it would be a great and irreparable injury and injustice to the defendant to require defendant to cut his fences loose and make of said easement a public road, and for the court to decree that the complainant had any right to demand this of defendant and to demand that defendant fence off a lane through defendant's field. He averred that complainant had no rights in the property of defendant nor in the lands through which he has an easement, except the right to pass over and across said lands. During the taking of testimony, the defendant's counsel gave notice to complainant and his counsel that he would ask of the court permission to file a cross-bill setting up a right to erect and maintain gates across the right-of-way, but this was not done.

Upon the question of the right or reasonableness of such erection and maintenance of gates much testimony was taken by each party to the cause.

The cause was heard by Honorable R. W. Smartt, Circuit Judge, sitting by interchange with the chancellor. He sustained complainant's right to use and benefit of the right-of-way, but subject to a right in defendant to erect and maintain gates across the same, one at the east end and at the public road, and the other at the dividing line between lots seven and eight, the defendant to keep said gates in repair; the complainant to have the right to leave the gates open if not kept in repair and also at such times as not to interfere in any way with the use of the lands of the defendant, or those holding under him. The defendant and those holding under him were perpetually enjoined from otherwise interfering with the use of the right-of-way by complainant. Each party was taxed with the payment of one-half of the costs.

From this decree, the complainant appealed and now insists that the court below erred:

"First:—In decreeing, under the pleadings, or otherwise, that defendant was entitled to erect and maintain not more than two gates across and over the right-of-way described in the pleadings; that such a decree is absolutely unjustified, as being entirely beyond the scope of the pleadings in this cause."

"Second:—In taxing any part of the costs against complainant."

In our opinion the court was not without the power to adjudge that complainant's right to the easement would be subject to a right in the defendant to erect and maintain the gates in the manner prescribed by the decree. It was not beyond the scope of the pleadings, and, therefore, this case does not fall within the rule laid down in the cases cited by the appellant. Those cases clearly hold that the courts can only act upon such matters as are properly brought before them by the parties according to the settled law, practice, and usage; that a court of chancery cannot pass upon matters not presented by the pleadings, so as to bind the parties; that a decree without pleadings is coram non judice and void. But here the issue is fairly made in the pleadings. The complainant claims in his bill a right to the free and unobstructed use of the easement and that defendant has no right to interfere with such free use. In the prayer of his bill he asks for a determination of his rights, for an injunction that will reach the equities of his case and fix his rights in the roadway. He thus asks the court to determine and declare what are his rights and then to enforce them.

The defendant insists in his answer that complainant's right to the unobstructed use of the easement means simply that the same

shall not be so obstructed that the complainant cannot pass over the land; that the defendant has the right to maintain fences and gates over said easement. He further insists that it would be an irreparable injury to him and his premises for the court to decree that the defendant had no right to keep gates across said easement, and the complainant had no right to demand this of defendant. Thus the defendant denies the claim of complainant of right to have no sort of obstruction, by setting up a right to erect and maintain gates. The defendant thus has sought to limit complainant's right by preserving his own claim of right. His averments are not only responsive to complainant's claim to a free and unobstructed easement, but also to his prayer that his rights be fixed and determined.

"As he who seeks equity must also do equity, the court will give the defendant any relief he may be entitled to in good conscience, as against the complainant, as to any matter connected with the subject-matter of the litigation." Gibson's Suits in Chancery, section 559.

"The general rule of chancery pleadings is that a defendant cannot obtain any affirmative relief either against a co-defendant or against the complainant, as to the subject-matter of a suit, without a cross-bill; but in Tennessee, the practice is to render such a decree, upon the pleadings and proof, as will settle all the rights of either complainants or defendants in and to the subject-matter of the suit, as against each other, and as will also settle the rights of the defendants as between themselves, in and to the subject-matter of the litigation. Our courts so mold their decrees as to make a final and complete disposition of the entire subject-matter, determining the rights of all the parties in reference thereto, regardless of their attitude as complainants or defendants upon the record." Id. section 729.

It is true that the laying out of a road, street or alley upon a plat or plan, and also upon the ground, and the registration of the plat operates as a dedication of it, not only in favor of those who buy from the donor, relying upon the existence of the road, street or alley, but also in favor of all who buy on the general plan of the locality. Wilson v. Acree, 97 Tenn., 378; Sims v. Chattanooga, 2 Lea, 694; Tullahoma v. Gill, 1 Shannon Cases, 326.

But while the plat of this land was so made and registered, the designation of the strip of ground thereon was, "right-of-way." The way leads from a public road only to certain land privately owned. It is conceded by the complainant that it is a private way. It is within a field that is used for pasture and cultivation. There is in this record a controversy whether or not at the auction the auctioneer announced, not only that this right-of-way had been reserved, but also that it would be a closed right-of-way, that is, crossed

by gates. It does not appear whether the acting chancellor found that he made such announcement and based his decree upon that as a fact, or irrespective of this question of fact, he based his decree upon the conclusion that the erection and maintenance of the two gates would not be an unreasonable obstruction, following the rule in Luster v. Garner, 128 Tenn., 160, which is as follows:

> "The owner of a servient estate can establish and maintain suitable gates at the termini of an easement of way acquired by an adjoining owner of farming lands by prescription; the prescriptive period maturing while the lands were unenclosed woodlands, during which no gates or bars were maintained."

We are of the opinion that this rule is applicable to the facts of this cause. The fact that the land involved is used for pasture and cultivation, and is not woodland would make it all the more applicable. The fact that this easement was acquired by grant and not by prescription would make no difference as to the right of the servient owner.

In Luster v. Garner, our Supreme Court adopted a rule laid down in one of the two conflicting lines of cases, and held that not only on precedent and principle, but also on the ground of sound policy, the right of the owner of the fee to erect and maintain gates should be declared. A leading case approved by the court in its opinion is the case of Dyer v. Walker, 99 Wis., 404, 75 N. W. 79.

The facts in that case were more nearly like the facts here presented. The rule laid down therein is as follows:

> "The owner of a right-of-way across the land of another, whether it was acquired by grant or by prescription, is entitled only to a reasonable and usual enjoyment thereof, in view of all the circumstances of the case and of the use then and theretofore made of the premises affected by it, and the owner of the soil is entitled to all the rights and benefits of ownership consistent with the easement. The owner of the land which is subject to a right-of-way may maintain a gate across such way, if necessary, to use and enjoyment of his land and does not unreasonably interfere with the use of the way."

The following notes of a learned annotator are found on pages 320 and 321 of Vol. 95, American State Reports:

> "In the absence of an express provision for an open way in a grant or gift of a private right-of-way, the owner of a fee may shut the termini thereof by gates, which the grantee must open and close when he uses the way. As nothing passes as incident to a grant for a right-of-way over the land of another, except what is necessary for its reasonable and proper enjoyment, the grant of such way does not deprive the grantor of the right to erect gates at the termini of each way in entering and leaving

his land." Frazier v. Myers, 132 Ind., 71, 31 N. E., 536; Maxwell v. McAtee, 9 B. Mon., 20, 48 Am. Dec., 409; Boyd v. Bloom, 152 Ind., 152, 52 N. E., 751; Short v. Devine, 146 Mass., 119, 15 N. E. 148.

"A mere grant of a right-of-way across land for travel and private road privileges never implies that it shall be open and free from gates or bars and gates, and bars may be lawfully maintained across such right-of-ways by the person granting such right when they are necessary to his convenient use of his remaining land, and do not interfere with a reasonable and proper enjoyment of the way. The mere fact that they cause inconvenience and annoyance is no ground for their removal." Boyd v. Bloom, 152 Ind., 152, 52 N. E., 751; Houpes v. Alderson, 22. Ia., 160; Patout v. Lewis, 51 La. Ann., 210; Baker v. Frick, 45 Md., 337; Bean v. Coleman, 44 N. H., 539.

The foregoing paragraphs set forth the rule which this court conceives to be the law in this State. It is deduced from the line of cases which were approved by our Supreme Court in Luster v. Garner.

In Newsom v. Newsom, 56 S. W., 29, decided by the court of Chancery Appeals and affirmed by our Supreme Court, it appeared that certain tenants in common executed partition deeds to each other, conveying expressly "the free passage and use of all roads as they now exist in and through any part or parcel of land as formerly owned by our father, and now divided by us." Across one tract was a road known as the "Old Mill Road," which was open and unobstructed and had been so for many years. It was not barred or closed by gates, fences or bars, at or before the partition deeds. The servient owner undertook to put gates across this road. It did not appear that they were proper or convenient, or that they were placed at points where the road entered and left the land. It was held that the gates could not be maintained.

Manifestly this case is sharply distinguishable from the instant case and does not control it.

With reference to the question as to what the auctioneer said when he sold these tracts by way of representation to possible purchasers, the witnesses Wilson, Webb, Cantrell, Orr and the defendant Garrison testify that it was publicly stated before the sale of these tracts that this right-of-way was provided, but that it was to be enclosed with gates or otherwise. The witness Henley says that he is not positive, but he understood that it was to be a "gate right-of-way," and not an open public road.

The witness Erickson, who was one of the real estate agents and promoters of the sale, and who was present, says that if anything was said about gates, he does not remember it, but that the auctioneer

did say that there was to be twenty foot right-of-way, "not to be enclosed or bothered;" that nothing was said as to gates; that the impression made on him was that it was to be a free open way without any obstruction. The witness Wattenbarger says that it was announced that it was to be an open right-of-way, and nothing was said about it being closed. The complainant Long testifies that he clearly understood that he would have a right-of-way that would not be shut up, but would be free and open and that there was no reservation. Two or three other witnesses testify that they were present, but that they do not remember what was said upon this subject.

While the testimony is very conflicting, we think that the weight of testimony is to the effect that an announcement was so made that this would be a twenty foot right-of-way, over lot number seven, with the privilege of erecting and maintaining gates upon it. It is reasonable to conclude that such an announcement was made, because it was to be a private way, leading only to certain lands and not to another public road.

We are of the opinion that under all the facts of this case, the erection and maintenance of the two gates in the manner prescribed by the decree is not an unreasonable obstruction, and fairly conserves the rights and interests of the owners of these tracts of land.

The taxation of costs is a matter within the sound discretion of the chancellor, and we think that in this case he has fairly apportioned the costs.

It results that there is no error in the decree of the chancery court, and the same is in all respects affirmed.

The appellant will pay the costs of his appeal and the same are adjudged against him and the surety on his appeal bond.

All concur except Clark, J., absent.