Whitehead, J.
Introduction
Plaintiffs, David Dastous and Martha Dastous, bring this action against defendants, Riccardo Nicosia and Deborah Nicosia, to compel defendants to remove an obstruction to an easement which plaintiffs possess to pass across property of the defendants which is located in Salisbury. The case was tried by the Court on a stipulation of facts supplemented by live testimony and a view. The following constitute the Court’s findings of fact, rulings of law and order for judgment after trial.
Findings of Fact
On or about April 27, 1989, the plaintiffs purchased a tract of registered land located at 49 Libby Avenue, in Salisbury. The plaintiffs’ ownership is evidenced by Document No. 24406, Certificate of Title No. 59092, as registered in the Land Registration Office of the Southern Registry District of Essex County.
Document No. 24406 specifically grants the plaintiffs “the right to pass and repass over Lot 19A,” an abutting property immediately to the east of the plaintiffs’ property, between the plaintiffs’ property and the waterfront. Lot 19A is originally evidenced on the subdivision Plan of Land in Salisbury, Plan No. 3200-61, recorded on May 23, 1940. The plaintiffs’ property is evidenced as Lot 19B on said Plan.
The “right to pass and repass” from Lot 19B across Lot 19A originated in the deeds of Dora Pollano, to Jennie Caruso, dated February 21, 1940, and is evidenced by Document Nos. 38931 and 30032 at said Registry of Deeds.
On June 4, 1956, Plan No. 3200-128 was filed in the Land Registration Office, whereby Lot 19A was subdivided, creating Lot 19C (a tract of land measuring fifty-five [55] feet in length and three [3] in width), and Lot 19D (a tract of land measuring fifty-five [55] feet in length and forty-seven feet [47] in width). Lot 19B remained undisturbed. The easement, now existing on two lots, nonetheless continued to exist, burdening Lots 19C and 19D, as described above. It ran from Lot 19B (plaintiffs property) in an easterly direction across virtually all of Lot 19C and the perimeter of Lot 19D, to Atlantic Avenue. From Atlantic Avenue, access may be had to the ocean.
On or about July 23, 1992, the defendants, Riccardo G. Nicosia and Deborah J. Nicosia, father and daughter, acquired joint ownership in the two tracts of registered land located at 86 Atlantic Avenue in Salisbury, evidenced as Lots 19C and 18B on said Plan No. 3200-128, above. (The defendant Riccardo Nicosia has had an interest in the property since 1973; he formerly held ownership to the property jointly with his wife, who is now deceased.) The defendants’ ownership in said lots 19C and 18B is evidenced by Document No. 274816, Certificate of Title No. 62364, in said Registry of Deeds.
Document No. 274816, specifically provides that Lot 19C (defendants’ property) is subject to the right in favor of Lot 19B (plaintiffs property) to pass and repass to and from the waterfront, as had existed with the original Lot 19A before it was subdivided.
Lot 19D is owned by Mr. Solomon J. Goulet, Jr., a party not named in this action. Lot 19D contains a structure thereon. As with Lot 19C, Document No. 291690, Certificate of Title No. 63855 specifically provides that the plaintiffs possess an easement to pass and repass across Lot 19D. The total width of the easement across Lots 19C and 19D is approximately six feet.
Although its location is depicted in maps and photographs which were introduced as exhibits at trial, the drawing set forth below may assist the reader in envisioning the locus:
[Drawing not included]
For some period of time, there existed an implicit, if not explicit, arrangement whereby plaintiffs permitted defendants to park vehicles on defendants’ property in such a way that the vehicles slightly encroached upon plaintiffs’ property, and defendants, in turn, permitted plaintiffs to pass over the easement with vehicles which slightly encroached upon defendants’ property. Defendants also permitted plaintiffs to park vehicles on the easement. However, a dispute eventually arose between the parties. At some point, plaintiffs erected a fence along the border of their property which prevented defendants from availing themselves of the previous parking arrangement. At some additional point after that, defendants found that the regular use which they had permitted plaintiffs to make of the easement was burdensome on *378 defendants’ use of their own property. In particular, there was an incident on the day of defendant Deborah Nicosia’s wedding when plaintiff Martha Dastous, who was attending another wedding, was required to ask the defendants to move the Nicosia’s rented limousine in order to enable her to depart in her own vehicle across the easement. Accordingly, defendants directed plaintiffs to cease using the easement for the travel and parking of vehicles, and the plaintiffs complied.
Shortly thereafter, defendants erected a fence which completely blocked the easement. A gate was installed, and defendants provided plaintiffs with a key. Plaintiffs continued to use the easement for foot travel. They opened the gate with the key. However, they did not always remember to close it. After a short period of time, the owner of Lot 19D, Mr. Goulet, cut down the fence because it extended onto his property. Defendants promptly built a new fence. The new fence extended horizontally across one-half of the easement to the border of defendants’ property (roughly the middle of the easement) and then vertically down the border of defendants’ property to the street. Although a gate was installed on the horizontal section of the fence, defendants declined to provide plaintiffs with a key. The effect of the new fence was to split the easement in half, leaving plaintiffs with access only to the three-foot wide portion of it which ran the length of Lot 19D to the street. A depiction of the impact of the fence is set forth below:
[Drawing not included]
Plaintiffs use the subject easement to enable family members and guests to walk back and forth to the beach. Plaintiffs’ family includes two young daughters who bring wagons, chairs, floats and similar items along with them when they use the easement. The narrowing of the easement impedes plaintiffs’ use of it for those purposes. Any use of the gate would do so as well. Defendants assert that the fence is necessary to protect their property from strangers who wish to pass over it on the way to the beach. However, there was no competent evidence that any strangers actually do pass over their property. For them to do so would require that they negotiate several other obstacles on adjacent properties before they reach the fence. Moreover, defendants’ fence, being relatively low, would not be a significant deterrent to a determined trespasser. The Court also observes that in terms of general security, defendants’ property is totally open on its eastern perimeter. Access freely may be had from the street. Thus, the fence appears to serve no purpose other than to limit plaintiffs’ use of the easement.
Discussion
It is settled that the owner of an estate which is subject to an easement “owns the soil and if necessary for his own protection . . . and use and enjoyment of his properly may erect at his own expense gates or bars across the way, . . . provided they are so located and maintained as not unreasonably to interfere with the [easement holder’s] privilege of passage.” Stucchi v. Colonna, 9 Mass.App.Ct. 851, 851 (1980), quoting Ball v. Allen, 216 Mass. 469, 472-73 (1914). However, “[t]he [holder of the easement] has a right to use the way in a reasonable manner, having regard to the correlative right of the [servient owner] to use [his] property in a reasonable way, in reference not only to [his] own benefit and convenience, but also to the benefit and convenience of the [holder of the easement].” Blais v. Clare, 207 Mass. 67, 69-70 (1910).
Cases have reached varying conclusions concerning the adverse character of gates or bar ways erected by servient owners across a right-of-way, not to impede use of the way, but to facilitate use of the servient estate. See. e.g., Dickinson v. Whiting, 141 Mass. 414, 417 (1886); Short v. Devine, 146 Mass. 119, 124-27 (1988), and cases cited; Lemieux v. Rex Leather Finishing Corp., 7 Mass.App.Ct. 417, 422 (1979); Stucchi v. Colonna, supra. The Courts have tended to weigh inconvenience to the dominant owner’s use of the way against the servient owner’s freedom to use his property in a reasonable manner for his own benefit and convenience and to strike an equitable balance. “The question is whether the interference is so slight as to be reasonable in all the circumstances.” Yagjian v. O’Brien, 19 Mass.App.Ct. 733, 735 (1985), and cases cited.
This Court has found that the fence and gate erected by defendants serve no valid purpose to them as servient owners of the subject property. On the other hand, they do impede plaintiffs’ use as the dominant owners. It is obvious that reasonable passage to the beach is the object of the easement. Reasonable passage includes the transporting of beach-related accessories. Anyone who has accompanied young children to the beach is aware that moving children, floats, chairs, pails, blankets, beach bags and other attendant items is materially complicated if one has to pass through what is effectively an alley three feet wide and fifty-five feet long, or even if one simply has to open, pass through and close a three-foot gate.
In the circumstances of this case, then, the defendants’ fence and gate (be it unlocked or locked) constitute an unauthorized encroachment on plaintiffs’ easement, and they must be removed. Although plaintiffs seek both compensatory and punitive damages, as well as court costs and attorneys fees, the Court has no authority to grant any financial relief beyond compensatory damages and ordinary taxable costs. As regards compensatory damages, the Court does not have a sufficient basis on which to arrive at any particular award. Accordingly, nominal damages will be ordered.
ORDER.
The Court ORDERS that defendants remove, within ten days of the entry of judgment, all obstructions on the plaintiffs’ easement, in particular, the fence and *379 gate which currently exist thereon. The Court further ORDERS that defendants be permanently enjoined and restrained from otherwise interfering with plaintiffs’ use of the easement. Judgment also shall enter for plaintiffs in the amount of one dollar, with taxable costs.